**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No.** **JURY TRIAL DEMANDED**

AMANDA MURRAY, *on behalf of herself and all others similarly situated,*

Plaintiff,

v.

ASSET RECOVERY, INC.,

Defendant.

---

## CLASS-ACTION COMPLAINT

---

### Nature of this Action

1. Amanda Murray ("Plaintiff"), individually and on behalf of all others similarly situated, bring this class action against Asset Recovery, Inc. ("Defendant") under the Telephone Consumer Protection Act ("TCPA").

2. Upon information and belief, Defendant routinely violates 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2) by delivering more than one advertisement or marketing telephone call to residential or cellular telephone numbers registered with the National Do-Not-Call Registry ("DNC Registry") without the prior express invitation or permission required by the TCPA.

### Parties

3. Plaintiff is a natural person who at all relevant times resided in Norfolk, Virginia.

4. Defendant is a Colorado corporation that provides fund recovery services to consumers, particularly focusing on helping recover surplus funds that may be available post-foreclosure.

5. Defendant's headquarters and principal place of business is located in Denver, Colorado.

**Jurisdiction and Venue**

6. This Court has subject matter jurisdiction under 47 U.S.C. § 227(c)(5), and 28 U.S.C. § 1331.

7. Venue is proper before this Court under 28 U.S.C. §§ 1391 (b)(1) and (b)(2) as Defendant is headquartered in this District, and because Defendant engaged in the complained-of conduct from this District.

8. In particular, Defendant directed its solicitation calls to Plaintiff's telephone from this District.

**Factual Allegations**

9. Plaintiff is, and has been at all times relevant to this action, the regular and sole user of her cellular telephone number—(757) 642-XXXX.

10. Plaintiff uses her cellular telephone as her personal residential telephone number.

11. In 2003, the Federal Communications Commission ("FCC") ruled that cellular telephone numbers that are placed on the DNC registry are presumed to be residential. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003).

12. Plaintiff registered her cellular telephone number with the DNC Registry on December 25, 2006, and has maintained that registration through the present date.

13. Starting in 2025 and continuing through the present, Plaintiff received a plethora of telephone calls from a rotating series of telephone numbers, each bearing a (720) area code, which is a Colorado area code:




10:50
Seascape
12:11 PM
Tuesday, February 17
[redacted]
+1 720-706-1870
Denver, CO
1:56 PM
(720) 706-1870
Denver, CO
1:56 PM
(720) 706-1870
Denver, CO
1:55 PM
[redacted]
10:52
[redacted]
Monday, December 15, 2025
[redacted]
(720) 706-1870
Denver, CO
6:20 PM
(720) 706-1870 (2)
Denver, CO
6:18 PM
[redacted]
10:52
[redacted]
Tuesday, November 18, 2025
(720) 572-1905
Colorado
5:47 PM
(720) 572-1905
Colorado
5:45 PM
[redacted]
10:53
[redacted]
Thursday, September 11, 2025
(720) 572-1905
Colorado
2:13 PM
[redacted]
10:54
[redacted]
Tuesday, July 29, 2025
[redacted]
(720) 673-0207
Denver, CO
7:34 PM
(720) 673-0207
Denver, CO
7:34 PM
[redacted]
[redacted]
Friday, May 9, 2025
[redacted]
(720) 673-0207
Denver, CO
4:55 PM
[redacted]
[redacted]
Tuesday, April 29, 2025
[redacted]
(720) 673-0207 (3)
Denver, CO
5:28 PM
[redacted]
[redacted]
Tuesday, April 15, 2025
[redacted]
(720) 673-0207
Denver, CO
2:32 PM
[redacted]




14. At least some of Defendant's telephone calls included Defendant leaving a voice message, where Defendant was looking for "Sandra Perejo."

15. Copies of the voicemail messages are available here.

16. Upon information and belief, Defendant contacted Plaintiff's telephone number in order to reach a "Sandra Perejo," in order to inquire about helping "Sandra Perejo" secure a foreclosure refund.

17. Plaintiff did not recognize the sender of these telephone calls.

18. Plaintiff did not request any services discussed in the subject telephone calls.

19. Plaintiff is not, and was not, interested in Defendant's services or marketing.

20. Plaintiff did not recognize the names or phone numbers associated with these voice messages, and had not made any inquiries regarding any aspect of surplus fund recovery services.

21. Plaintiff is not "Sandra Perejo", does not know who "Sandra Perejo" is, and is not related to any person named or going by "Sandra Perejo."

22. Furthermore, Plaintiff has never owned property in the State of Florida nor has she ever been subject to foreclosure proceedings for any properties regardless of location.

23. Upon information and belief, due to the number and repetition of telephone calls, Plaintiff believes that Defendant placed additional telephone calls to Plaintiff not specified above.

24. Defendant's website—www.assetrecoveryinc.com—touts that "Asset Recovery Claims Managers are specialists in providing recovery assistance for money owed from various sources of real property."[1]

25. More specifically, Defendant represents that it " identifies unclaimed funds through private research utilizing a dedicated team of analysts, referrals, and direct client engagement to build a network of potential clients" in order to "provide you with options on how you can work with us, details of our expected recovery process, and ensure the heavy-handed approach of our attorney network to recover what is rightfully yours", with a "guarantee of funds" to provide "peace of mind" post-recovery.[2]

26. Defendant is not-so-subtle in hiding its telemarketing efforts; it advertises that one of the "steps" to their service is Defendant "finding you" through the use of "specialized skip tracing resources and private investigators to locate you and ensure

---

1 https://www.assetrecoveryinc.com/ (last visited June 23, 2026).
2 *Id.*

your opportunity for unclaimed money does not remain hidden."[3]

27. In other words, Defendant advises on its public-facing website that if persons receive *unexpected* communications from Defendant, it is because Defendant likely skip traced their phone numbers so it *can possibly* help them with surplus funds recovery services.

28. These methods of locating potential customers inherently presume that Defendant lacks consent before calling targeted persons, given that the use of "skip tracing" and "private investigators" to find customers inherently indicates that those potential customers did not provide prior express consent to Defendant prior to being contacted.

29. Ultimately, Defendant advertises that its role is to help persons know where unclaimed monies are, and to help those persons navigate the claims recovery process or retain an attorney to do so.[4]

30. Commensurate with that role, Defendant arranges for legal and administrative services to recovery unclaimed funds for Defendant's customers in exchange for compensation.

31. Defendant is compensated on a contingency basis as it "is only paid if and when money is received."[5]

32. In addressing certain negative reviews, Defendant admits that it charges a fee structure in its contracts:

---

[3] *Id.*
[4] *Id.*
[5] *Id.*

Michelle Borel
11 reviews

★☆☆☆☆ Edited 6 months ago

***I personally called the company and the person on the phone did say they watch tax sales! That is preying! I had several phone calls from people that this company called them and they informed me of the amounts that this company was wanting...25% of the amount that they were intitled to! This one person was getting over $34k so this company would be getting over 8k.*** This company went to the extent of watching a live tax sale and then contacting the people whom just had their property sold for more than the minimum bid. This company sought out these people and are charging an obscene amount to claim the excess proceeds when 1. the company has no idea how much funds actually will go to said person and 2. it would only cost around $1k from a local attorney to file a motion to claim those excess proceeds! Make me SICK! DONT PREY ON PEOPLE WHO HAVE SO MANY THINGS GOING ON GOOD OR BAD!

1

Asset Recovery Inc (Owner)
Edited 6 months ago

The statements made here are factually incorrect and misleading. Our company does not "watch live tax sales" or target individuals in the manner described. We operate strictly within the law, under signed agreements, and only after verifying entitlement through public records.
We also do not "charge an obscene amount." Every fee structure is disclosed upfront, contingent on successful recovery, and is often less than what clients would pay in time, effort, and legal costs pursuing these claims alone. Additionally, we pay all costs of the claim with no money up front.
Suggesting that a local attorney can universally file motions for "around $1,000" ignores the reality that costs vary widely, and attorneys often require retainers or hourly billing that exceed that figure. Again, we cover the attorney's costs, whether we are successful or not.
Most importantly, we do not prey on anyone. We provide a professional service that helps people recover funds they might otherwise never know about or claim. Our track record shows millions returned to rightful owners who lacked the time, knowledge, or resources to navigate complex government procedures.
Our work is transparent, documented, and beneficial to the clients we serve. [6]

33. Upon information and belief, Defendant charges a fee for its services using either the following fee agreement, or one materially similar:

---

[6] https://www.google.com/search?q=asset+recovery+inc.&ie=UTF-8#lrd=0x876c78d0881b8735:0x6967ada5469f15be,1,,,, (last visited June 23, 2026).

## CONTINGENCY FEE AGREEMENT

This Agreement is made by and between [redacted] acting as heir and/or executor to the Estate of [redacted], (herein referred to as CLIENT) and Asset Recovery Inc., (hereafter referred to as COMPANY).

**1. RECITALS:** This agreement is made with reference to the following facts and circumstances.

a) COMPANY is in the business of processing claims for funds it has located.

b) CLIENT is eligible in full or in part to a claim equaling approximately: $85,675.36 Originating from a Foreclosure sale under Parcel: #[redacted]/Address: [redacted]

**2. PERFORMANCE:**

a) COMPANY will advance all costs and perform all reasonable duties necessary to obtain the funds including retaining attorney services, paying court expenses where appropriate, and defending against competing claims if applicable.

b) COMPANY agrees to provide to the fullest extent possible all forms and documents required to process the claim.

c) CLIENT authorizes COMPANY to act as their exclusive agent to process the claim.

d) Both parties agree to cooperate fully with all reasonable requests from the other in performance of this Agreement.

**3. COMPENSATION:**

a) *CLIENT and COMPANY agree that this Agreement is contingent upon CLIENT actually receiving CLIENT'S share of the funds. In the event the claim is not paid, all parties are released of their duties and obligations under this Agreement and CLIENT will have no obligation whatsoever to compensate COMPANY nor COMPANY to compensate CLIENT.*

b) CLIENT and COMPANY agree to an assignment fee based on the below fee schedule.

c) Under no circumstances is CLIENT responsible for paying any of COMPANY'S expenses including attorney's fees or court fees where applicable.

d) Above compensation is variable based on the amount Collected:

| $ Amount Collected | Assignment Fee % | Client % |
|---|---|---|
| $0 - $20,000 | 40 | 60 |
| $20,001 - $30,000 | 35 | 65 |
| $30,001 - $70,000 | 30 | 70 |
| $70,001 - $100,000 | 20 | 80 |
| $100,001 - $200,000 | 15 | 85 |
| $200,001 - $500,000 | 10 | 90 |
| $500,000 - $1,000,000+ | 5 | 95 |

34. Plaintiff did not give Defendant prior express consent or prior express written consent to place calls to her cellular telephone number.

35. Upon information and belief, Defendant placed the calls to Plaintiff's cellular telephone number for non-emergency purposes.

36. Upon information and belief, Defendant placed the calls to Plaintiff's cellular telephone number voluntarily.

37. Upon information and belief, Defendant placed the calls to Plaintiff's cellular telephone number under its own free will.

38. The purpose of the solicitation calls at issue was to advertise and to market Defendant's business or services.

39. Plaintiff did not give Defendant prior express invitation or permission to place advertising or telemarketing calls to her cellular telephone number.

40. Plaintiff suffered actual harm as a result of the communications at issue in that she suffered an invasion of privacy, an intrusion into her life, and a private nuisance.

41. Upon information and good faith belief, Defendant knew, or should have known, that Plaintiff registered her cellular telephone number with the DNC Registry.

**Class Action Allegations**

42. Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following class (the "Class"):

> All persons throughout the United States (1) to whom Asset Recovery, Inc. delivered, or caused to be delivered, more than one telephone call within a 12-month period, promoting Asset Recovery, Inc.'s, or its business partners', goods or services, (2) where the person's residential telephone number had been registered with the National Do Not Call Registry for at least thirty days before Asset Recovery, Inc. delivered, or caused to be

delivered, at least two of the telephone calls within the 12-month period, (3) within four years preceding the date of this complaint through the date of class certification.

43. Excluded from the Class is Defendant, its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

44. Upon information and belief, the members of the Class are so numerous that joinder of all of them is impracticable.

45. The exact number of members of the Class are unknown to Plaintiff at this time, and can be determined only through appropriate discovery.

46. The members of the Class are ascertainable because the Class are defined by reference to objective criteria.

47. In addition, the members of the Class are identifiable in that, upon information and belief, their telephone numbers, names, and addresses can be identified in business records maintained by Defendant, and by third parties, including members of the Class.

48. Plaintiff's claims are typical of the claims of the members of the Class.

49. As it did for all members of the Class, Defendant placed solicitation telephone calls to Plaintiff's telephone number more than thirty days after Plaintiff registered her cellular telephone number with the DNC Registry.

50. Plaintiff's claims, and the claims of the members of the Class, originate from the same conduct, practice, and procedure on the part of Defendant.

51. Plaintiff's claims are based on the same theories as are the claims of the

members of the Class.

52. Plaintiff suffered the same injuries as the members of the Class.

53. Plaintiff will fairly and adequately protect the interests of the members of the Class.

54. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the Class.

55. Plaintiff will vigorously pursue the claims of the members of the Class.

56. Plaintiff has retained counsel experienced and competent in class action litigation.

57. Plaintiff's counsel will vigorously pursue this matter.

58. Plaintiff's counsel will assert, protect, and otherwise represent the members of the Class.

59. The questions of law and fact common to the members of the Class predominate over questions that may affect individual members of the Class.

60. Issues of law and fact common to all members of the Class include:

a. Defendant's practice of placing telephone calls, for solicitation purposes, to telephone numbers already registered on the DNC Registry for more than thirty days;

b. Defendant's conduct, pattern, and practice as it pertains to delivering advertisement and telemarketing solicitation telephone calls;

c. Defendant's violations of the TCPA; and

d. The availability of statutory penalties.

61. A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

62. If brought and prosecuted individually, the claims of the members of the Class would require proof of the same material and substantive facts.

63. The pursuit of separate actions by individual members of the Class would, as a practical matter, be dispositive of the interests of other members of the Class, and could substantially impair or impede their ability to protect their interests.

64. The pursuit of separate actions by individual members of the Class could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.

65. These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the Class.

66. The damages suffered by the individual member of the Class may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the Class to redress the wrongs done to them.

67. The pursuit of Plaintiff's claims, and the claims of the members of the Class, in one forum will achieve efficiency and promote judicial economy.

68. There will be no extraordinary difficulty in the management of this action as a class action.

69. Defendant acted or refused to act on grounds generally applicable to the

members of the Class, making final declaratory or injunctive relief appropriate.

**Count I**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Class**

70. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-69.

71. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

72. Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

73. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

74. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the class members who registered their respective residential telephone numbers with the DNC Registry, which is a listing of persons who do not wish to receive telephone solicitations

that is maintained by the federal government.

75. Defendant violated 47 U.S.C. § 227(c)(5) because it delivered, or caused to be delivered, to Plaintiff and members of the Class, more than one solicitation call in a 12-month period in violation of 47 C.F.R. § 64.1200.

76. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200, Plaintiff, and the members of the Class, are entitled to damages in an amount to be proven at trial.

**Prayer for Relief**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a. Determining that this action is a proper class action;

b. Designating Plaintiff as class representatives of the proposed Class under Federal Rule of Civil Procedure 23;

c. Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

d. Adjudging and declaring that Defendant violated 47 U.S.C. § 227(c)(5);

e. Enjoining Defendant from continuing its violative behavior, including continuing to place solicitation telephone calls to telephone numbers registered with the DNC Registry for at least thirty days;

f. Awarding Plaintiff and the members of the Class damages under 47 U.S.C. § 227(c)(5)(B);

g. Awarding Plaintiff and the members of the Class treble damages

under 47 U.S.C. § 227(c)(5)(C);

h. Awarding Plaintiff and the members of the Class reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

i. Awarding Plaintiff and the members of the Class any pre-judgment and post-judgment interest as may be allowed under the law; and

j. Awarding such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Date: June 29, 2026

By: */s/ Bryan A. Giribaldo*
Bryan A. Giribaldo
Alex D. Kruzyk
**PARDELL, KRUZYK & GIRIBALDO, PLLC**
7500 Rialto Blvd. Suite 1-250
Austin, Texas 78735
bgiribaldo@pkglegal.com
akruzyk@pkglegal.com
Tele: (561) 726-8444

*Counsel for Plaintiff and the proposed class*